IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDGAR COELLO, MONICA COELLO ASHFORD, ELIZABETH ANN GURSKE, JESSICA COELLO GUILLEM INDIVIDUALLY AND AS NEXT FRIEND OF ISABELLA GUILLEM | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-04-3221 |
| THE CITY OF HOUSTON, *et al.*, Defendants | § § § § | |

**MEMORANDUM AND ORDER**

Pending before the Court in this civil rights dispute arising from the August 2002 arrests and/or detentions of Plaintiffs is a Motion for Summary Judgment [Doc. # 20] ("Defendants' Motion") filed by The City of Houston (the "City") and former Chief of Police C.O. Bradford ("Bradford").[1]  Plaintiffs have filed a Response [Doc. # 36] ("Plaintiff's Response"),[2] to which Defendants have filed a Reply [Doc. # 44].[3]  The motion is ripe for

---

[1]   In addition to the City and Bradford, HPD Captain Mark Aguirre remains a Defendant in this case.  All other Defendants have been dismissed.

[2]   Plaintiffs' Response is virtually identical to the response filed by the plaintiffs in a companion case in this Court, *Lopez, et al. v. The City of Houston, et al.,* Cause No. H-03-2297 [*Lopez* Doc. # 144] ("*Lopez*").

[3]   In their Reply, Defendants refer the Court to the substance of the reply in *Lopez* [*Lopez* Doc. # 151].

decision. Having considered the parties' submissions, all matters of record, and the applicable legal authorities, the Court concludes that Defendants' Motion should be **granted in part and denied in part**.

## I.  BACKGROUND

The following facts are alleged in Plaintiffs' First Amended Complaint [Doc. # 16]. On the night of August 17-18, 2002, Houston Police Department ("HPD") officers orchestrated a surprise raid upon the parking lots of a K-Mart retail store and Sonic Drive-In restaurant located at the 8400 block of Westheimer Road in Houston, Texas. Approximately seventy-seven armed police officers, backed up by helicopters, two tow trucks and jail transports, descended upon the parking lot and indiscriminately arrested everyone on the premises – two hundred seventy-eight people. On the previous night, August 16-17, 2002, as "practice" for the main event, HPD officers raided a James Coney Island Restaurant on the 5700 block of Westheimer Road and detained and arrested approximately twenty-five people, including Plaintiffs in the instant case.

Plaintiffs Edgar Coello, his sisters Monica Coello Ashford and Jessica Coello Guillem, his niece, two-year old Isabella Guillem, and friend Elizabeth Ann Gurske were admiring a friend's car after dining at the James Coney Island restaurant when the raid occurred. Numerous HPD vehicles swarmed the parking lot, blocking the exits. An HPD helicopter circled above. All of the persons found in the parking lot were herded together and placed under arrest for "trespassing." Edgar Coello was separated from his family and

friend and ordered to stand against a fence. When he turned around to scan the crowd to try to locate his sisters and infant niece, an HPD officer told him that if he turned around again, "he would be shot."

Meanwhile, the female Plaintiffs were searched in front of male officers, and subjected to jests and humiliation. Plaintiff Jessica Coello Guillem was separated from her two-year old daughter, who cried inconsolably. HPD officers eventually allowed Jessica Coello Guillem to be reunited with her infant, but would not permit her to drive the child home in the family vehicle.

Edgar Coello, Monica Coello Ashford, and Elizabeth Gurske were handcuffed with tight plastic zip ties. Edgar Coello suffered bruising, swelling, and numbness of the wrists, hands and shoulders. Then the arrestees were forced to wait outside in the summer heat for hours while HPD officers completed probable cause affidavits. Some needed to use the restroom and were forced to soil themselves when this basic dignity was denied. Edgar Coello suffered an aggravation to an existing kidney condition.

The arrestees were transported to jail in hot, overcrowded buses. At the prison, many were forced to wait outside for several hours while those inside were processed. Inside, they were packed body-to-body in holding cells with dangerous criminals. The cells stank of sweat, urine, feces, and vomit, the toilets were open to public view, and were filthy and overflowing. The prisoners faced the Hobson's choice of sitting in filth or standing for the entire length of their confinement. Jail personnel and officers verbally jeered at them. The last Plaintiff remained jailed until late the next morning, August 17, 2002.

At each of the raids, arresting officers signed arrest affidavits without personal knowledge of facts establishing probable cause to arrest. Plaintiffs claim that the officers knew or should have known that they were not guilty of the charge, "attempted trespassing." Of the two hundred seventy-eight arrests made on the evenings in question, one was for misdemeanor possession of marijuana and one was for parole violation. All the "attempted trespassing" charges against the rest of the arrrestees were ultimately dismissed as wrongful arrests. There were no arrests for public intoxication, vandalism, drag racing, trespassing, or any other crime.

Plaintiffs allege that their arrests were made pursuant to an HPD exercise dubbed "Operation ERACER," mass arrests on August 16, 17, and 18, 2002 intended to target illegal street racing. All Plaintiffs allege that the operations were conducted by Captain Mark Aguirre with the knowledge and express or implied authorization of Chief C.O. Bradford. Plaintiffs further allege that the arrests were made pursuant to an express or implied policy of HPD known as "zero tolerance." Plaintiffs allege that, pursuant to this alleged policy, HPD targets an area and arrests anyone and everyone in the area without regard for probable cause or evidence of criminal activity.

There is no evidence before the Court that any street racing occurred on the evenings in question.

Plaintiffs assert causes of action pursuant to 42 U.S.C. § 1983 against the City, Bradford, and Aguirre for constitutional civil rights violations. Plaintiffs claim three bases for the City's liability under § 1983: (1) execution of a policy, custom or practice that

deprived them of constitutionally protected rights; (2) a custom or practice, not formally approved, but so widespread that it takes the force of law, that deprived them of constitutionally protected rights; and (3) insufficient supervision of HPD employees resulting in the deprivation of their constitutional rights. Plaintiffs also assert a "conspiracy" claim against all Defendants. The constitutional rights that Plaintiffs assert arise under (1) the Fourth Amendment's prohibition against unlawful detention and arrest, (2) the Fourth, Fifth, Eighth, and Fourteenth Amendment's prohibition against the use of excessive force and against custodial abuse, and (3) the Fourteenth Amendment right to due process of law. Plaintiffs also assert a state law cause of action against Bradford and Aguirre for the intentional tort of false arrest and imprisonment.

## II.  DISCUSSION

Plaintiff's claims, and the summary judgment arguments advanced by the parties in this lawsuit, are essentially identical to those asserted in a companion case, *Cori Lopez, et al. v. City of Houston, et al.,* Civil Action No. H-03-2297 ("*Lopez*"). The Court hereby incorporates the analysis and rulings set forth in the Court's Memorandum and Order dated July 25, 2005, in *Lopez,* a copy of which is attached to this opinion.

## III.  CONCLUSION AND ORDER

The Court concludes that Plaintiffs may proceed with their § 1983 claim against the City and Bradford based in the facially unconstitutional Jackson Plan. To succeed on this claim, Plaintiffs must prove that Bradford personally approved of the specific Jackson Plan. Plaintiffs may also proceed with their § 1983 claim against the City and Bradford based on

a "zero tolerance" custom of detention without reasonable suspicion. To succeed on this claim, Plaintiffs must prove the existence of such a custom and Bradford's knowledge or constructive knowledge of the custom. In addition, Plaintiffs may proceed against the City and Bradford on their claim that Bradford failed to supervise his staff so as to prevent Plaintiffs' unlawful detention.

The Court finds there are genuine questions of material fact that preclude summary judgment in Bradford's favor on qualified immunity on Plaintiffs' claims against Bradford based on a policy, practice, or custom of detention without reasonable suspicion, and based on Bradford's failure to supervise so as to prevent Plaintiffs' illegal detentions.

All other § 1983 claims against the City and Bradford are dismissed. Plaintiffs' state law claims against Bradford are dismissed. It is hereby

**ORDERED** that Defendants The City of Houston and C.O. Bradford's Motion for Summary Judgment [Doc. # 20] is **GRANTED in part** and **DENIED in part**.

SIGNED at Houston, Texas, this **25th** day of **July, 2005**.

_____
Nancy F. Atlas
United States District Judge